## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAMELA D. GUSTOVICH, | |
|     Plaintiff, | |
| v. | CIV. NO. |
| TOWN OF GREENWICH, | |
|     Defendant. | AUGUST 27, 2014 |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

Plaintiff Pamela D. Gustovich is a Captain in the Town of Greenwich Police Department and has been a police officer in Greenwich for over 26 years.  She brings this action to seek redress for the Department's ongoing unlawful discrimination on the basis of her gender and sexual orientation, long-standing perpetration of a hostile work environment abusive to women, and retaliation against her for her efforts to protest and eradicate the Department's unlawful conduct.

The Greenwich Police Department's abusive practices officers outlined in this Complaint have been pervasive, continuous and concerted in effect.  The practices have been tolerated and fostered by the Department's Command Staff – including the Chief and Deputy Chief – who have knowingly allowed a work environment permeated with discriminatory intimidation, ridicule, humiliation and insult of women.

Plaintiff seeks relief from these unlawful and abusive practices for herself and other female officers pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and Connecticut's Fair Employment Practices Act, C.G.S. §46a-51 *et seq.*

## II.   JURISDICTION

1.     The jurisdiction of this Court is invoked with respect to plaintiff's federal claims pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1367, providing supplemental jurisdiction over plaintiff's state law claims.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) in that plaintiff is a resident of Connecticut, defendant is a Connecticut municipality, and defendant's wrongful conduct at issue herein is alleged to have occurred in Connecticut.

## III.   PARTIES

3.     Plaintiff Pamela D. Gustovich is a citizen of the United States and a resident of the State of Connecticut.

4.     Defendant Town of Greenwich is a municipality of the State of Connecticut and, at all times mentioned herein, has maintained the Greenwich Police Department (the "Department") as an agency and instrumentality of the Town and is the employer of the officers in the Department, including the Chief of Police and Department Command Staff.

2

IV.   **STATEMENT OF THE FACTS**

    5.    Plaintiff Pamela D. Gustovich is employed as a Police Captain in the Greenwich Police Department.

    6.    Plaintiff was first employed as a Police Officer in the Town of Greenwich on November 30, 1987 and has been employed as a sworn officer in the Greenwich Police Department for almost 26 years.

    7.    As a result of her superior performance, plaintiff has during her tenure in the Department advanced through the ranks of the Department.  Plaintiff was promoted to the rank of Police Sergeant on April 18, 1996 and to the rank of Police Lieutenant on February 18, 2003.  On January 24, 2012, plaintiff was promoted to the rank of Police Captain.  Along with the Chief, the Deputy Chief and the two other Captains in the Department, plaintiff is part of the Command Staff of the Greenwich Police Department and one of the five highest ranking members of the Department.

    8.    Plaintiff is a female; she is also a lesbian.

    9.    Plaintiff has been and is being subjected to discriminatory treatment in her employment based on her gender and sexual orientation which has substantially interfered with and is continuing to substantially interfere with her ability to do her job and the terms and conditions of her employment.

3

10.     Plaintiff has been and is being subjected to a hostile work environment based on gender and sexual orientation which has also substantially interfered with and is continuing to substantially interfere with her ability to do her job and the terms and conditions of her employment.

11.     The Greenwich Police Department work place is permeated with discriminatory intimidation, ridicule and insult based on animus toward women and lesbians sufficiently severe and pervasive so as to alter the conditions of the work environment.  The hostile work environment endured by plaintiff has been marked by threats and humiliation that have been continuous and concerted in effect.

12.     Throughout plaintiff's employment as a police officer of the Town of Greenwich, the Greenwich Police Department has exhibited discriminatory attitudes based on gender and sexual orientation and hostile conduct toward women, and plaintiff has repeatedly experienced such discriminatory attitudes, hostile conduct and a hostile work environment.  For example,

     a.     When plaintiff was assigned as the Training Lieutenant and standing in front of a room about to begin a training, a Greenwich Police Department Special Police Officer came up beside her and blew into her ear.  Plaintiff filed a formal complaint with Human Resources concerning this incident.

4

b.    On a number of occasions, plaintiff has been verbally taunted by other officers saying things like: "Have you ever been fucked before or are you the type who only makes love;" "You don't have any fucking balls to freeze off;" and, most pointedly, "women are not wanted on the job."

c.    Plaintiff has also been subjected to offensive conduct such as an officer or officers urinating on her office plant and leaving a tube of K-Y Jelly on her desk when she sought, as a Detective Sergeant, to investigate an incident involving a naked 14 year old girl at the Hyatt Regency Hotel in Greenwich.

d.    In or about July 2012, Officer Albert Moavero posted a message on his Facebook page referring to plaintiff which stated words to the effect "the dyke should be hanging from the rafters." Greenwich Police Department Chief James J. Heavey showed plaintiff this posting which she found very disturbing. Captain Mark Kordick, a member of the Department Command Staff who was present at the time, said "it's not slander if it's true." The Chief did not reprimand Captain Kordick for this comment. Officer Moavero received the mildest form of discipline, a report of counseling. The administration did not advise the members of the

Greenwich Police Department generally, many of whom had seen the posting, that such conduct would not be tolerated.

e.   On or about August 25, 2012, after plaintiff counseled Greenwich Police Department Sergeant Louis S. Pannone about performance issues, including the fact that he had disobeyed a direct order she had given him, Pannone told Lieutenant Richard Cochran: "that fucking cunt cut off my balls and put them in her purse." Lieutenant Cochran informed plaintiff about Sergeant Pannone's tirade and, in so doing, kept repeating the word "cunt" to her even though she asked him not to because she found the use of this language very offensive. Plaintiff informed the Chief about this incident and that she believed Sergeant Pannone's hostility toward her was because he did not want to take command from a woman.

f.   In or about November 2012, it was brought to plaintiff's attention that pictures of nude and scantily glad women in provocative poses were displayed on the door in Greenwich Police Department Lieutenant Robert J. Lombardo's office. Plaintiff advised Chief Heavey about the pictures and the Chief and she went to investigate. The pictures were degrading to women and offensive. Although Lieutenant Lombardo was directed to remove the pictures, he was not subjected to any discipline as a result of

6

posting this offensive display, nor did the Administration communicate to the members of the Department that such displays would not be tolerated.

g.   In or about February 2013, Greenwich Police Department Lieutenant James Bonney, who was then President of the Greenwich Police Department officers' union, the Silver Shield Association [SSA], confronted plaintiff, saying: "You're a bitch" and "You come off as such a bitch in your emails;" Lieutenant Bonney then texted plaintiff that: "Having people like you [in the Greenwich Police Department] is not a requirement." These outbursts by Lieutenant Bonney were in response to orders and/or directives that plaintiff had issued to officers under her command.

h.   In or about April 2013, Lt. Bonney complained to plaintiff that she had assigned too many women to his squad in Patrol and that he needed "big, burly men, men with beef."

i.   On or about April 16, 2013, a maxi pad (a feminine hygiene product) was prominently displayed on the lieutenant's keyboard on the computer at the Department front desk which is like a fish bowl, surrounded on two sides by glass. When plaintiff asked Greenwich Police Department Sergeant Brent Reeves, who was the only officer on duty in the area, what the maxi

7

pad was doing there, he turned red and did not answer.  Another patrol officer in the area expressed disgust with what he understood to be the offensive behavior directed against plaintiff.  Plaintiff reported this incident to Deputy Chief Mark A. Marino, but nothing was done in response.

j.     In or about September 2013, plaintiff complained to Chief Heavey that an officer was circulating a photograph in the Greenwich Police Department of a probationary Hispanic female officer who had her hands in the air to stop traffic at the scene of a bank robbery with the caption:  "Dora the Explorer Gives Up."  Plaintiff told Chief Heavey that this was disrespectful and derogatory toward female, as well as Hispanic officers.  Chief Heavey refused to act on plaintiff's complaint and told her, in effect, he did not see the problem.

k.     On or about February 26, 2014, there was a Command Staff meeting which Chief Heavey, Deputy Chief Marino, Captain Mark Kordick, Captain Robert Berry, Lieutenant Gregory Hannigan and plaintiff attended.  During this meeting, Captain Kordick passed around photos of different designs for the new police fleet. In one photo, the back quarter panel of the

car said "Call 911 and make me come."  Deputy Chief Marino dismissedd

plaintiff's protest of this offensive picture.

13.     Chief Heavey and the Administration of the Greenwich Police Department have

knowingly tolerated these abusive attitudes and conduct by members of the Department and have

refused to implement appropriate discipline or corrective orders to eliminate these abusive

attitudes and conduct.  Indeed, as the examples recounted in ¶ 12 illustrate, the abusive attitudes

and conduct pervade the supervisory ranks – *i.e.*, sergeant, lieutenant, captain, deputy chief and

chief – of the Department.

14.     Female officers are under-represented at every level in the Greenwich Police

Department.  There are approximately 150+ sworn members of the Department and only 12

females.  Plaintiff was the first and is the only female Captain, and of the 36 supervisory officers

(at the rank of sergeant or above in the Department), she is one of only 2 female officers holding

a supervisory rank in the Greenwich Police Department.

15.     After plaintiff was promoted to Captain and assigned as Captain of Patrol in

January 2012, her ability to act as the Commander of the Patrol Division was immediately

undercut and her job responsibilities as Patrol Captain were restricted due to gender bias.

16.     The position description for Police Captain, dated December 2011, under which

plaintiff was promoted to Captain in January 2012 specified that, as Patrol Captain, she would

have oversight, as Patrol Division Commander, of the Community Impact Section.

17.     However, as soon as plaintiff was assigned as Patrol Captain, the Community Impact Section was removed from her command.  The officer in charge of the Community Impact Section, Sergeant Michael Reynolds, had repeatedly told plaintiff from the time she first became a Greenwich police officer that women should not be police officers and that he would never take orders from a female officer.  Sgt. Reynolds' biased views were well known within the Greenwich Police Department.  Rather than confront Sgt. Reynolds' biased refusal to take orders from a female officer, the Greenwich Police Department administration removed the Community Impact Section which he headed from plaintiff's command, thereby diminishing the scope of her job responsibilities, undercutting the authority of her command and communicating to other officers within the Greenwich Police Department that gender bias was acceptable and would be tolerated.

18.     The fact that the administration chose to avoid confronting a biased officer's refusal to take orders from a female supervisor and, in effect, sanctioned his views when plaintiff assumed her command assignment as Captain of Patrol, fostered an open season for any biased objections to plaintiff's command.

19.     After plaintiff assumed command of the Patrol Division, some supervisors who reported to her began to push back against her as their commander, and, within a few months, plaintiff became the target of extraordinarily offensive and blatant discriminatory hostility, as

illustrated by the examples in ¶ 12d ("the dyke should be hanging from the rafters" and "it's not slander if it's true"); ¶ 12e ("that fucking cunt cut off my balls and put them in her purse"), and ¶ 12g ("You're a bitch;" "You come off as such a bitch in your emails;" "Having people like you [in the Greenwich Police Department] is not a requirement").

20.     When plaintiff met with the Chief about the incident involving Sergeant Pannone described above, the Chief acknowledged the fact that the intensity of Sergeant Pannone's anger against her suggested that he had a problem reporting to a woman.  But although the Chief was aware of the gender-based hostile reaction to plaintiff's command, he did not address it.  Instead, he allowed the hostility toward plaintiff as the first female commander in the Greenwich Police Department to continue and grow unchecked.

21.     Because the chain of command and respect for rank are key elements of the Greenwich Police Department's paramilitary management structure, the Greenwich Police Department – like all other similar organizations – cannot allow orders to be disobeyed or authority to be disrespected.  Thus, when opposition has been expressed to the command style and/or orders and directives issued by other (male) members of the Greenwich Police Department Administration (including orders and directives by other (male) Patrol Captains, Chief Heavey, as well as prior Chiefs, backed the (male) members of the Command Staff.  In particular, when officers within the Patrol Division pushed back against and/or complained about

11

orders and directives issued by other (male) Patrol Captains, the administration supported the Patrol Captain's authority and certainly did not restrict the scope of the Patrol Captain's authority to assuage the complaints of those under the Patrol Captain's supervision.

22.     On or about September 5, 2012, the Chief held a supervisors' meeting (not including other members of the Command Staff). At this meeting, plaintiff was targeted for criticism. The Chief did not back plaintiff up as a member of his Command Staff even though the orders she had issued which were under attack had been requested and/or approved by the Chief.

23.     On or about October 23, 2012, a Loudermill hearing was held for Detective Vincent E. O'Banner in the Town of Greenwich Human Resources Department. As the assigned Internal Affairs investigator, plaintiff was present at the hearing. Also present were the HR Director, Mary L. Pepe, the Chief, the Deputy Chief, Lt. Bonney, President of the SSA, Kevin Greco, the attorney representing the SSA, and Detective O'Banner. O'Banner, who is African American, asserted in defense that he was being subjected to a hostile work environment. However, the hostility expressed toward plaintiff at this meeting by Lt. Bonney and Attorney Greco was so intense that HR Director Pepe stated: "Captain Gustovich is the only one in a hostile work environment."

24.     From on or about the end of August 2012 when Sergeant Pannone became intensely angry at plaintiff for counseling him concerning, *inter alia*, his failure to obey her direct order, Sergeant Pannone, who was the Vice President of the SSA, and other leadership within the SSA embarked on a campaign to denigrate her and have her removed as Captain of Patrol.

25.     In or about January 2013, Deputy Chief Mark Marino, in speaking with plaintiff about push back he was receiving concerning her management of an issue involving the potential abuse of compensatory time, suggested that plaintiff could express herself in "softer" language in her emails. He also suggested that plaintiff should have her executive officer, Lieutenant Brian Briggs, review her emails before they went out. While plaintiff thought this suggestion – *i.e.*, to have a lower ranked officer review her emails – was demeaning and inappropriate, she followed his suggestion. Lt. Briggs did not find fault with any of plaintiff's email communications.

26.     In or about February 2013, the Chief gave plaintiff her SMART goals evaluation and identified no issues of concern. The Chief asked what he could do to help. Plaintiff replied that he could support her. This did not happen.

27.     On or about April 9, 2013, members of the SSA met with Chief Heavey, spent two hours attacking plaintiff's competence and integrity, and informed the Chief that unless he removed plaintiff as Captain of Patrol, the SSA would hold a vote of no confidence against him. At no time did the Chief back plaintiff up at this meeting.

28.    The day after the April 9, 2013 meeting, plaintiff was told by officers who had been present at the meeting that Lt. Bonney, Sgt. Reeves, and Sgt. Timothy M. Hilderbrand were the most vocal and adamant proponents of having her removed.  (It is plaintiff's understanding that Sgt. Pannone, who had been actively instigating her removal since August 2012, was on vacation and thus was not present at the meeting.)

29.    On or about April 10, 2013, plaintiff met with Chief Heavey and Deputy Chief Marino and told them that she felt she was working in a gender-based hostile work environment. Plaintiff reminded Chief Heavey that he had questioned whether Sgt. Pannone had a problem reporting to a woman when Sgt. Pannone had become so intensely angry at plaintiff after plaintiff counseled him concerning performance issues, including his failure to obey her direct order. Plaintiff told Chief Heavey and Deputy Chief Marino that the hostile work environment was interfering with her ability to do her job and that her health and her career were both being adversely affected by the hostile work environment is which she was trying to work.

30.    On May 3, 2013, as plaintiff was leaving on vacation, Chief Heavey and Deputy Chief Marino called her into a meeting where they informed her that she was being removed from the Patrol Captain assignment and reassigned to be Operations Captain "for the good of the Department."

31.     The reassignment to Operations Captain was, in effect, a demotion and greatly reduced plaintiff's job responsibilities and, in particular, resulted in her supervising far fewer officers within the Greenwich Police Department.

32.     Not only was Operations Captain a significantly less responsible position as described in the position description, but when plaintiff was reassigned to Operations Captain, the first listed responsibility of the position – oversight of the Information Technology Section – was removed from her Command as Operations Captain and transferred to the Command of Captain Mark Kordick, who had previously been Operations Captain and was now being assigned to replace plaintiff as Patrol Captain.

33.     To plaintiff's knowledge, no other (male) Captain has ever been involuntarily removed from a command position in the past.

34.     Plaintiff immediately called HR Director Pepe on May 3, 2013 to inform her that she had just been told that she was being removed from the position of Patrol Captain.

35.     On May 4, 2013, plaintiff filed a formal internal complaint concerning the fact that she was being subjected to gender-based discrimination and subjected to a hostile work environment based on her gender and sexual orientation.  Plaintiff specifically identified the SSA and its instrumental members, Lt. Bonney, Sgt. Pannone, Sgt. Hilderbrand, Lt. Cochran, Lt. Lombardo and Sgt Reeves, as well as its attorney, Kevin Greco, as the instigators of the hostile

work environment.  Plaintiff noted that Chief Heavey and Deputy Chief Marino facilitated and bolstered the hostile work environment.  Plaintiff specifically identified her removal from her assignment as Captain of Patrol as part of the discrimination and hostile work environment.

36.     On or about May 14, 2013, Chief Heavey attended an SSA meeting and informed the SSA that plaintiff was being removed from Captain of Patrol.  The SSA's threatened vote of no confidence against the Chief was placed on hold.

37.     The Town of Greenwich hired two outside individuals to investigate plaintiff's complaint.  They issued a report on or about August 1, 2013 [the "Marcum Report"] purporting to find no hostile work environment.  This investigation was conducted in a wholly irresponsible manner and failed utterly to acknowledge or address relevant events that plaintiff cited as grounds for her hostile work environment claim, producing a sham finding.

38.     The flaws in this investigation included, but are not limited to the following:

a.     The Marcum Report stated that plaintiff said her ability to do her job had not been affected by the hostile work environment even though plaintiff's ability to do her job had been significantly diminished by the hostile work environment and she had informed the investigators verbally and in writing that this was so.

16

b.      The investigators acceded to the SSA's demand that Attorney Greco and/or Sgt. Pannone be present in every interview they conducted of officers in the Greenwich Police Department even though plaintiff had specifically named Attorney Greco and Sgt. Pannone as instigators of the hostile work environment and everyone in the Greenwich Police Department understood that the SSA was behind her removal from the Patrol Captain position.

c.      The investigators decided that all the officers interviewed would be given their "Garrity rights" which suggested to everyone interviewed that plaintiff had made a complaint against each of them – including the officers that she had suggested could provide information in support of her complaint – and that they might be disciplined for what plaintiff was purportedly claiming they did.

d.      Even though the SSA attorney and/or union representative were present in all the officers' interviews, plaintiff was not allowed to have her attorney present when she was interviewed, nor was plaintiff's request to have a representative of HR present in the interviews to assure a neutral observer granted.

17

e.   The Marcum Report did not mention or address significant aspects of plaintiff's hostile work environment complaint including 1) that plaintiff was the first female Captain in the Greenwich Police Department and that no other (male) Captain had ever been involuntarily removed from an assignment in the past, 2) that extremely offensive gender-based and sexual orientation-based comments had been directed at plaintiff (*see e.g.*, ¶ 12), and 3) that the officers who were instigating the attack on plaintiff had overtly expressed their gender biases, making comments like there were too many women in their squad or they needed to have big, burly men instead.

f.   The Marcum Report did not identify the individuals who provided the information contained in the Summarization of Interviews of Union/Supervisors/Rank and File and/or even identify all the interviewees. The fact that the sources and/or interviewees were not identified made it impossible to evaluate and/or respond to the information in regard to such relevant considerations as whether the information provided came from the individuals against whom plaintiff complained, whether the Report

18

included all the information provided to the investigators, and/or what questions the interviewees were asked.

g.  The Report did not address plaintiff's claim of discrimination based on the fact that she was subjected to worse terms and conditions of employment than her male peers in the Greenwich Police Department in that she was not the only Captain in the Greenwich Police Department that the rank and file objected to and complained about to the Administration of the Greenwich Police Department, but that she was the only Captain in the Greenwich Police Department that was ever removed from an assignment for non-disciplinary reasons based on such objections.  Plaintiff is the first and only female Captain in the Greenwich Police Department. She was removed from her assignment when objections arose to her command.  No male Captain in the Greenwich Police Department has ever been removed from an assignment despite objections having arisen to the (male) Captain's command.

19

h.     The Report did not address plaintiff's claim that management conflicts arose from some officers'/supervisors' resentment of and objections to a having female commander which, in turn, was not kept in check because the Police Department Administration failed to back plaintiff up.

38.     Plaintiff's internal complaint also concerned the fact that her sexual orientation is a substantial factor in the hostility and discriminatory conduct she has experienced and continues to experience at the Greenwich Police Department. The Marcum Report did not address this claim. Thus, for example, the following information was not discussed by the Marcum Report:

a.     The Facebook posting, noted in ¶ 12d above, stating that plaintiff should be "swinging from the rafters" refers to her by the derogatory term "dyke."

b.     When plaintiff spoke to Greenwich Police Department officers after being appointed Captain of Patrol, Lt. Bonney told her that he and Lt. Kraig Gray thought that she was going to "come out" in her speech.

c.     Lt. Bonney has continuously used text messaging which he shares with many other officers in the Greenwich Police Department to ridicule members of the Town of Greenwich government who are openly gay and/or whom Lt. Bonney and/or other Greenwich Police Department officers believe to be gay.

39.     As a result of her filing the above referenced internal complaint of discrimination, plaintiff was retaliated against for filing the complaint and, in addition, has continued to experience discrimination and hostility, *inter alia*, in the following ways:

      a.     On or about July 1, 2013, plaintiff was given an unwarranted negative rating on her performance evaluation ostensibly for the false reason that "Miscommunication on certain issues may on occasion cause discord in the Department."

      b.     On or about July 1, 2013, plaintiff was given a substandard 1.5% raise rather the standard 2% raise given to the other (male) Captains.

      c.     Following plaintiff's filing of the internal complaint, for the first time and unlike the other (male) Captains, she has been required to report all time off and away from the Greenwich Police Department during work hours to the Deputy Chief rather than to her Administrative Assistant.

      d.     Plaintiff has not been invited to and/or notified about important meetings that took place under the area of the Operations Command to which she is now assigned.

e.     Plaintiff has been marginalized within the Greenwich Police Department; members of the Greenwich Police Department Administration do not speak to her.

f.     The SSA and/or the Greenwich Police Department Administration have threatened those officers within the Greenwich Police Department who have supported plaintiff in her complaint with the result that some of plaintiff's supporters have been intimidated and/or no longer speak to her.

g.     Even though plaintiff objected for various reasons including her concern that it would be subjecting her to a continuing hostile work environment, plaintiff was ordered to do the performance evaluation of three supervisors whom she had named in her internal complaint to the Town – Lt. Cochran, Lt. Bonney and Lt. Lombardo.  Over objection, plaintiff did Lt. Cochran's evaluation.  Even though Deputy Chief Marino was present with her in the room when the evaluation occurred, plaintiff feared for her physical safety both during and after the evaluation because of the intense anger that Lt. Cochran expressed at her during the evaluation.  After plaintiff gave the evaluation, Lt. Cochran filed a response which contained numerous falsehoods and misrepresentations.  When plaintiff responded to his lies

22

and misrepresentations and reiterated her complaint that forcing her to do his performance evaluation was improper, Deputy Chief Marino asked plaintiff to agree to remove all reference to this evaluation from the Town's files, including her response.  Plaintiff refused.

40.     As Chief of the Greenwich Police Department, defendant Heavey has the authority, responsibility and ability to cause his subordinates to conform their conduct to the requirements of law and civilized behavior, including the requirement that they conduct themselves as officers in the Greenwich Police Department in a manner free from gender-based discrimination and abuse, sexual orientation discrimination and abuse, and retaliatory conduct. Chief Heavey (and other members of the Department Command Staff) have intentionally refused to require Department members to conduct themselves in a lawful and appropriate manner.

41.     On or about October 29, 2013, plaintiff filed administrative complaints with the Equal Employment Opportunity Commission [EEOC] and Connecticut Commission on Human Rights and Opportunities [CHRO] alleging employment discrimination on the basis of her gender and sexual orientation, a hostile work environment and harassment, and retaliation for her protected conduct.

23

42.     Subsequent to plaintiff's filing of her administrative complaints with the EEOC and CHRO, plaintiff was subjected to further retaliatory conduct by the Greenwich Police Department, including continued disrespect and disparagement of plaintiff, including by members of the Department Command Staff,  unchecked by the Chief and Deputy Chief; circumvention of plaintiff's authority, including communications in violation of the proper chain of command directly to plaintiff's subordinates, without including plaintiff; excluding plaintiff from discussions and decision of multiple matters that relate to areas of her command or of Command Staff decisions that she would normally participate in making; disobedience of plaintiff's orders tolerated by the Chief and Deputy Chief; disrespect for officers working for plaintiff, thus further undermining plaintiff's authority; and unwarranted criticism, including unwarranted reprimands.

43.     The abusive and retaliatory conduct plaintiff has been subjected to since the filing of her administrative complaints has included outrageous physically threatening conduct by Captain Mark Kordick, a member of the Department Command Staff.  At a Staff Meeting on January 8, 2014 attended by plaintiff with Chief Heavey and Deputy Chief Marino shortly after an incident involving Sergeant Sean P. O'Donnell's refusal to obey an Operations Order that had been written by Chief Heavey but was issued under plaintiff's name, Captain Kordick became enraged at plaintiff.  He kept banging his hands and cell phone on the table, he grabbed the

24

bottom of his chair and began to jump up and down while grunting like an animal through gritted teeth and leaning towards plaintiff.  At no point did anyone in the room attempt to stop him or his behavior.  Plaintiff tried to remain calm and professional. At one point, Kordick jumped out of his chair, pushing his chair so hard it hit the wall and began to directly yell at plaintiff.  Although the Chief finally said "Enough," Kordick continued his abusive behavior.  Following the meeting, plaintiff told Deputy Chief Marino that Kordick's threatening behavior was unacceptable and that she wanted something done about it.  Marino dismissed Kordick's behavior as "grandstanding" and said that he did not feel threatened.  Plaintiff told Marino that she did feel threatened. Although Marino said that he would speak to Kordick, nothing happened. Plaintiff subsequently heard that when Marino did speak to Kordick, Kordick overturned a table but was not disciplined.

44.     Although Kordick was not disciplined, Marino reprimanded and counseled plaintiff for sending two emails to Sergeant O'Donnell concerning the incident, referring to these routine emails as "outrageous and over the top" and criticized plaintiff for not meeting with Sergeant O'Donnell in person.  In response to plaintiff's explanation of the reasons for sending the emails, Marino stated that he did not care and that plaintiff was being reprimanded.

25

45.     On or about April 10, 2014, plaintiff filed an amendment to her administrative complaints with EEOC and CHRO, alleging continuing illegal retaliation against her by the Greenwich Police Department.

46.     The Department's discriminatory, abusive and retaliatory conduct toward plaintiff has continued to date, including continued disparagement and disrespect of plaintiff's authority, both verbally and in field situations where plaintiff's command authority is disregarded; continued exclusion of plaintiff from discussions and decision-making in which she would properly participate.

47.     A few weeks after Captain Kordick's outrageous theatening conduct at the Staff Meeting, plaintiff passed Captain Kordick in the hallway, and he made a full body gesture by putting his arms up and out to the side while lunging towards plaintiff.

48.     Plaintiff informed the Chief of this incident.  Chief Heavey asked plaintiff what she wanted done to feel safer.  He had no suggestions.  Plaintiff suggested training and discipline, but the Chief stated that too much time had passed for discipline and that training would be taken in a negative light as it was done years ago.   Chief Heavey further stated that he felt that it would hurt the situation even more and noted that training was not done when the black and Hispanic officers won their lawsuit against the Department.

26

49.     The Town of Greenwich has discriminated and continues to discriminate against plaintiff in the terms and conditions of her employment in that she was removed from the Patrol Captain because of her gender and sexual orientation, she has been marginalized as a member of the Greenwich Police Department Command Staff, she has been subjected to a hostile working environment and abuse, and she has been and continues to be retaliated against in the Greenwich Police Department because she has complained about and sought to eradicate discriminatory conduct toward her and others in the Department.

50.     As a result of the discriminatory and retaliatory conduct and hostile work environment described above, plaintiff has sustained substantial economic loss, including damage to her career, loss of future promotional opportunities, and impairment of future employment opportunities outside the Greenwich Police Department.

51.     As a further result of the discriminatory and retaliatory conduct and hostile work environment described above, plaintiff has sustained emotional distress and anxiety, including fear for her safety.

52.     Defendant's conduct as aforesaid was undertaken with malice and/or with reckless indifference to plaintiff's protected rights.

53.     Plaintiff received a Notice of Right to Sue dated July 24, 2014 from the Department of Justice, Civil Rights Division authorizing her to bring suit within 90 days from her receipt of the Notice.  (See Exhibit A.)

54.     Plaintiff received a Release of Jurisdiction letter dated May 30, 2014 from the CHRO authorizing her to bring suit within 90 days from her receipt of the Release.  (See Exhibit B.)

## V.     CLAIMS FOR RELIEF

### A.     FIRST CLAIM FOR RELIEF

1- 54.     Paragraphs 1 through 54 of this Complaint are hereby incorporated as ¶¶ 1 through 54 of the First Claim for Relief.

55.     Defendant Town of Greenwich has unlawfully and willfully discriminated against plaintiff based on her gender with regard to the terms, conditions and opportunities of her employment, in violation of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e-2(a).

56.     Defendant Town of Greenwich has unlawfully and willfully maintained a hostile work environment based on gender and continues to do so to date, in violation of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e-2(a).  The Greenwich Police Department work place is permeated with discriminatory intimidation, ridicule and insult based

on animus toward women sufficiently severe and pervasive so as to alter the conditions of the work environment.  The hostile work environment endured by plaintiff was marked by threats and humiliation that has been continuous and concerted in effect.

57.     As a result of defendant's unlawful conduct as aforesaid, plaintiff has sustained and will in the future sustain financial loss, including lost wages and severe impairment to her career and future career opportunities and earnings.

58.     As a result of defendant's unlawful conduct as aforesaid, plaintiff has sustained and will in the future sustain, emotional distress, including embarrassment, humiliation, degradation and mental pain and anguish.

**B.     <u>SECOND CLAIM FOR RELIEF</u>**

1- 54.     Paragraphs 1 through 54 of this Complaint are hereby incorporated as ¶¶ 1 through 54 of the Second Claim for Relief.

55.     Defendant Town of Greenwich unlawfully and willfully discriminated against plaintiff based on her gender and sexual orientation with regard to the terms, conditions and opportunities of her employment, in violation of Conn. Gen. Stat. § 46a-60(a)(1) and § 46a-81(c).

56.     Defendant Town of Greenwich has unlawfully and willfully maintained a hostile work environment based on gender and sexual orientation and continues to do so to date, in violation of Conn. Gen. Stat. § 46a-60(a)(1) and § 46a-81(c).  The Greenwich Police Department

29

work place is permeated with discriminatory intimidation, ridicule and insult based on animus toward women sufficiently severe and pervasive so as to alter the conditions of the work environment.  The hostile work environment endured by plaintiff was marked by threats and humiliation that has been continuous and concerted in effect.

57.    As a result of defendant's unlawful conduct as aforesaid, plaintiff has sustained and will in the future sustain financial loss, including lost wages and severe impairment to her career and future career opportunities and earnings.

58.    As a result of defendant's unlawful conduct as aforesaid, plaintiff has sustained and will in the future sustain, emotional distress, including embarrassment, humiliation, degradation and mental pain and anguish.

C.    **THIRD CLAIM FOR RELIEF**

1- 54.    Paragraphs 1 through 54 of this Complaint are hereby incorporated as ¶¶ 1 through 54 of the Third Claim for Relief.

55.    Defendant Town of Greenwich has unlawfully and willfully retaliated against plaintiff for attempting to vindicate her protected rights against gender discrimination and protection against a hostile work environment through her internal complaints and administrative complaints to the EEOC and CHRO, in violation of 42 U.S.C. § 2000e-3.

56.     As a result of defendant's retaliatory actions as aforesaid, plaintiff has sustained and will in the future sustain financial loss, including lost wages and severe impairment to her career and future career opportunities and earnings.

57.     As a result of defendant's retaliatory actions as aforesaid, plaintiff has sustained and will in the future sustain, emotional distress, including embarrassment, humiliation, degradation and mental pain and anguish.

**D.**     **FOURTH CLAIM FOR RELIEF**

1- 54.     Paragraphs 1 through 54 of this Complaint are hereby incorporated as ¶¶ 1 through 54 of the Fourth Claim for Relief.

55.     Defendant Town of Greenwich has willfully retaliated against plaintiff for attempting to vindicate her protected rights against gender discrimination, sexual orientation discrimination and protection against a hostile work environment through her internal complaints and administrative complaints to the EEOC and CHRO, in violation of Conn. Gen. Stat. § 46a-60(a)(4) and (5).

56.     As a result of defendant's retaliatory actions as aforesaid, plaintiff has sustained and will in the future sustain financial loss, including lost wages and severe impairment to her career and future career opportunities and earnings.

31

57.     As a result of defendant's retaliatory actions as aforesaid, plaintiff has sustained and will in the future sustain, emotional distress, including embarrassment, humiliation, degradation and mental pain and anguish.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for the following relief:

1.     An order directing defendant to implement immediate corrective measures to eradicate the ongoing discrimination, retaliation and hostile work environment prevalent in the Greenwich Police Department, including the initiation of necessary policies, monitoring and reporting to insure that defendant's ongoing unlawful conduct is halted;

2.     An order directing defendant to reinstate plaintiff to her former position as Captain of Patrol with the full responsibilities attendant to that position and to remove all discriminatory or retaliatory adverse information in plaintiff's personnel file;

3.     Compensatory damages pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a(b) for plaintiff's lost past and future earnings and benefits, emotional distress and mental anguish, and for other damages suffered by plaintiff as a result of defendant's unlawful gender discrimination and perpetration of a  hostile work environment;

4.      Compensatory damages pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a(b) for plaintiff's lost past and future earnings and benefits, emotional distress and mental anguish, and for other damages suffered by plaintiff as a result of defendant's unlawful retaliation;

5.      Compensatory damages pursuant to Conn. Gen. Stat. § 46a-104 for plaintiff's economic losses and emotional distress as a result of defendants' acts of unlawful gender and sexual orientation discrimination and perpetration of a hostile work environment;

6.      Compensatory damages pursuant to Conn. Gen. Stat. § 46a-104 for plaintiff's economic losses and emotional distress as a result of defendants' acts of unlawful retaliation;

7.      Attorney's fees and costs of this action, pursuant to 42 U.S.C. § 2000e-5(k) and Conn. Gen. Stat. § 46a-104;

8.      Such other relief as the Court may deem appropriate.

Dated at Stamford, Connecticut this 27th day of August, 2014.

PLAINTIFF PAMELA D. GUSTOVICH,

BY: /s/ David S. Golub
       David S. Golub ct00145
       Jonathan M. Levine ct07584
       SILVER GOLUB & TEITELL LLP
       184 Atlantic Street
       Stamford, CT  06901
       Tel.  (203) 325-4491
       Fac.  (203) 325-3769
       Email: dgolub@sgtlaw.com
             jlevine@sgtlaw.com

       and

BY: /s/  Kathryn Emmett
       Kathryn Emmett ct05605
       Deborah L. McKenna ct17326
       EMMETT & GLANDER
       45 Franklin Street
       Stamford, CT  06901
       Tel.  (203) 324-7744
       Fac.  (203) 969-1319
       Email: kemmett@emmettandglander.com
             dmckenna@emmettandglander.com

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
_____ x
PAMELA D. GUSTOVICH,                 :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :     CIV. NO.
                                     :
TOWN OF GREENWICH,                   :
                                     :
        Defendant.                   :     AUGUST 27, 2014
_____ x
```

## CLAIM FOR JURY TRIAL

Plaintiff claims a trial by jury.

PLAINTIFF PAMELA D. GUSTOVICH,


BY:  /s/ David S. Golub
        David S. Golub ct00145
        Jonathan M. Levine ct07584
        SILVER GOLUB & TEITELL LLP
        184 Atlantic Street
        Stamford, CT  06901
        Tel.  (203) 325-4491
        Fac.  (203) 325-3769
        Email: dgolub@sgtlaw.com
                jlevine@sgtlaw.com

        and

BY:   /s/ Kathryn Emmett
      Kathryn Emmett ct05605
      Deborah L. McKenna ct17326
      EMMETT & GLANDER
      45 Franklin Street
      Stamford, CT  06901
      Tel.  (203) 324-7744
      Fac.  (203) 969-1319
      Email: kemmett@emmettandglander.com
            dmckenna@emmettandglander.com

# EXHIBIT   A



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2014 4682

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

July 24, 2014

Ms. Pamela D. Gustovich
c/o Deborah L. McKenna, Esquire
Law Offices of Emmett & Glander
45 Franklin Street
Stamford, CT  06901

Re:  EEOC Charge Against Town of Greenwich
     No. 16A201400214

Dear Ms. Gustovich:

    Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC
Boston Area Office, Boston, MA.

    This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                         Sincerely,

                         Jocelyn Samuels
                    Acting Assistant Attorney General
                       Civil Rights Division

              by        *Karen J. Ferguson*

                      Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section

cc: Boston Area Office, EEOC
    Town of Greenwich

# EXHIBIT   B

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Pamela D. Gustovich
**COMPLAINANT**

CHRO No. 1420150

vs.

Town of Greenwich                                    EEOC No. 16A-2014-00214
**RESPONDENT**

## RELEASE OF JURISDICTION

**The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.**

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

May 30, 2014
DATE

Tanya A. Hughes, Executive Director

cc:   Deborah L. McKenna, Esq., via email: dmckenna@emmettandglander.com
      Saranne P. Murray, Esq., via email: smurray@goodwin.com