# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PAMELA D. GUSTOVICH,

               Plaintiff,

  v.

TOWN OF GREENWICH

           Defendant.

3:14 - CV - 01242 (CSH)

**September 8, 2015**

## RULING ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

**HAIGHT,** Senior District Judge:

Plaintiff Pamela D. Gustovich, a captain in the Greenwich police department, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60 *et seq.* ("CFEPA"), against her employer, the Town of Greenwich ("Defendant").  Plaintiff claims that Defendant has discriminated against her based on her gender and sexual orientation, subjected her to a hostile work environment, and retaliated against her for lawfully exercising her right to be free from discriminatory conduct.

Plaintiff has filed a motion pursuant to Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 20(a)(2) to add three individual defendants, Greenwich police officers, and to assert new claims against each of them for intentional infliction of emotional distress.  Defendant opposes that motion.  This Ruling decides it.

## I

The following alleged facts are derived from the complaint. Doc. [1].  They do not represent

findings by the Court.  At this stage of the case, the Court is concerned only with the pleadings.

Over the course of her 27 year tenure in the Greenwich police department, Plaintiff has steadily risen through the ranks.  Along with the Chief, Deputy Chief, and two other captains, Plaintiff is part of the "Command Staff" of the Greenwich police department, and one of the five highest ranking members of the police force.  *Id.* at ¶ 7.  Plaintiff is female and a lesbian.  *Id.* at ¶8.

Female officers are under-represented in the Greenwich police department.  Of the approximately 150 or more members of the department, there are only 12 female members.  Aside from Plaintiff, there is but one other female officer who holds a supervisory rank (defined as a rank of sergeant or above).  *Id.* at ¶ 14.

A substantial portion of the events giving rise to this litigation occurred following Plaintiff's promotion to the rank of Police Patrol Captain ("Patrol Captain") on January 24, 2012.  Though the position description for that position at the time of Plaintiff's promotion specified oversight responsibility of the Community Impact Section, the department administration relieved Plaintiff of her command of this section when the officer directly in charge of the Community Impact Section, Sergeant Michael Reynolds, communicated to Plaintiff that he would not be taking orders from a female officer.  *Id.* at ¶¶ 16-17.  The administration's decision to remove the Community Impact Section from Plaintiff's command not only resulted in "diminishing the scope of her job responsibilities," it also "undercut[] the authority of her command and communicat[ed] to other officers within the Greenwich Police Department that gender bias would be tolerated."  *Id.* at ¶ 17.  In fact, it "fostered an open season for . . . biased objections to [P]laintiff's command."  *Id.* at ¶18.

Subordinate officers, motivated by discriminatory animus toward females in general and homosexual females in particular, disobeyed Plaintiff's commands and subjected her to verbal

harassment and vulgar conduct designed to humiliate and marginalize Plaintiff.  *Id.* at ¶¶ 12, 15, 17, 19.  Although the administration of the Greenwich police department was aware that Plaintiff was being subjected to this abusive conduct, it did nothing to prevent it.  When Plaintiff reported specific instances of harassment and insubordinate conduct, the administration repeatedly declined to discipline recalcitrant officers.  *Id.* at ¶¶ 13, 18, 20.  In contrast, the administration supported the authority of male officers.  *Id.* at ¶ 21.  The department's indifference to Plaintiff's treatment, had the effect of fostering open challenges to Plaintiff's authority, and made it nearly impossible for Plaintiff to supervise those under her command.  *Id.* ¶18.

Discrete instances of insubordination grew into a campaign to denigrate Plaintiff and remove her as Patrol Captain.  On April 9, 2013, members of the Greenwich police department's officers' union, the Silver Shield Association ("SSA"), attacked Plaintiff's competence and integrity at a meeting with Chief James Heavey.  *Id.* at ¶¶ 24, 27.  The officers informed Chief Heavey that the SSA would hold a vote of no confidence against him unless he removed Plaintiff from the position of Patrol Captain.  *Id.* at ¶27.

On May 3, 2013, Chief Heavey gave in to this ultimatum.  *Id.* at ¶30.  He and Deputy Chief Mark A. Marino informed Plaintiff that "for the good of the Department" she was being removed from the position of Patrol Captain and reassigned to the position of Operations Captain.  *Id.* at ¶ 30.  This reassignment was the functional equivalent of a demotion, greatly reduced Plaintiff's job responsibilities, and resulted in her supervising far fewer officers within the Greenwich police department.  *Id.* at ¶ 31.  Furthermore, the Information Technology Section, which was historically under the command of the Operations Captain, was assigned to Captain Mark Kordick, the former Operations Captain who replaced Plaintiff as Patrol Captain.

Plaintiff immediately informed HR Director Mary L. Pepe that she had been removed from the position of Patrol Captain, and on May 4, 2013, "filed a formal internal complaint concerning the fact that she was being subjected to gender-based discrimination and subjected to a hostile work environment based on her gender and sexual orientation." *Id.* at ¶ 35. Plaintiff specifically identified certain members of the SSA as the instigators of the hostile work environment, and noted that Chief Heavey and Deputy Chief Marino "facilitated and bolstered the hostile work environment." *Id.*

As a result of filing the internal complaint, members of the department have retaliated against Plaintiff and continue to discriminate against her and treat her with hostility. For instance, on July 1, 2013, Plaintiff "was given an unwarranted negative rating on her performance evaluation" and "a substandard 1.5% raise rather than the standard 2% raise given to other male captains." *Id.* at ¶ 39. a-b. Furthermore, "unlike other (male) Captains, she has been required to report all time off and away from the Greenwich Police Department during work hours to the Deputy Chief rather than to her Administrative Assistant." *Id.* at ¶ 39.c. Members of the Department do not speak to Plaintiff and have excluded her from "important meetings" concerning "the Operations Command." *Id.* at ¶ 39.d-e.

On October 29, 2013, Plaintiff filed administrative complaints with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging employment discrimination on the basis of her gender and sexual orientation, a hostile work environment and harassment, and retaliation. Following the filing of her CHRO and EEOC complaints, the department subjected Plaintiff to further retaliatory conduct including, *inter alia*, unwarranted criticisms and reprimands and excluding Plaintiff from discussions on various matters relating to her area of command.

4

Plaintiff remains employed by the Greenwich police department as Operations Captain.  She continues to be subjected to discrimination, a hostile work environment, and retaliatory conduct.  She filed this lawsuit on August 27, 2014.

On July 2, 2015, Plaintiff file a proposed amended complaint and motion pursuant to Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 20(a)(2) to name Chief James Heavey, Captain Robert Berry (another member of the Greenwich Police Department Command Staff), and Captain Mark Kordick as defendants and to assert claims against each of them for intentional infliction of emotional distress.  The proposed amended complaint also contains additional factual allegations supporting those claims as well as further detail in support of the causes of actions based on Title VII and CFEPA.

## II

### A.    <u>Legal Standard</u>

While this is Plaintiff's first motion to amend her complaint, the timing is such that she may not do so as a matter of course.  Rule 15(a)(1) of the Federal Rules of Civil Procedure specifies the conditions under which a party may amend its pleading as a matter of course.  None of those conditions exists in the case at bar.  Instead,  the question is governed by Rule 15(a)(2), which provides that in the circumstances of the case at bar "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires."[1]  Defendant does not consent to the motion, and so Plaintiff may amend

---

[1] Plaintiff seeks leave to amend his complaint pursuant to Rules 15(a)(2) and 20(a)(2) of the Federal Rules of Civil Procedure.  "[B]ecause in practical terms there is little difference between [Rules 15(a) and 20(a)] in that they [both] leave the decision whether to permit or deny the amendment to the district court's discretion, the court will not separately analyze the present motions under each of [these] Rules."  *Oneida Indian Nation of N.Y. State v. County of Oneida*, 199 F.R.D.

her complaint only with the Court's leave.  "Whether leave should be granted is entrusted to the district court's discretion, which cannot be regarded as entirely unfettered, since the last sentence of Rule 15(a)(2) contains a pointed instruction, reflective of the procedural rules' ultimate objective that justice be done." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11 cv 1209 (CSH), 2013 WL 424535, at *2 (D. Conn. Feb. 1, 2013); *Oneida India Nation of N.Y. State v. County of Oneida, N.Y.*, 199 F.R.D. 61, 73 (N.D.N.Y. 2000) (stating that "despite the considerable latitude which Rule 15(a) grants in terms of allowing amendments, leave to amend should not be granted automatically or reflexively" (internal quotations and citation omitted)).

"In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. — the leave sought [to amend] should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").  Moreover, it is a "rare" event when "such leave should be denied . . . especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) (citing *Foman*, 371 U.S. at 182).

---

61, 72 (N.D.N.Y. 2000);  *Meyers v. Kishimoto*, No. 3:14 cv 535 (CSH), 2015 WL 4041438, at *3 (D. Conn. July 1, 2015) (citing same).  Therefore, to determine whether Plaintiff may make the proposed amendments and add Heavey, Kordick, and Berry as defendants, I will address Rule 15(a) and apply the standards governing amendments of the pleadings under *Foman v. Davis*, 371 U.S. 178 (1962) and the progeny of that case discussed in the text of this Ruling.

Defendant opposes the motion to amend the complaint principally on grounds that the claims Plaintiff seeks to assert against Heavey, Berry, and Kordick are not viable as a matter of law, so that the amendment would be futile; that it is untimely; and that it does not comply with Rule 7(f) of the District of Connecticut Local Rules of Civil Procedure. I address those arguments in reverse order.

**B.    Failure to Comply with the Local Rules**

Plaintiff's failure to comply with Local Rule 7(f), while unaccountable and procedurally improper, is not a basis in these circumstances to deny the instant motion. Rule 7(f) states in its entirety:

> Any motion to amend a party's pleading under Fed. R. Civ. P. 15(a) that requires leave of court shall include a statement of the moving counsel that: (1) he or she has inquired of opposing counsel and there is agreement or objection to the motion; or (2) despite diligent effort, he or she cannot ascertain opposing counsel's position.

D. Conn. Loc. R. 7(f). Plaintiff, through counsel, states that she "inadvertently neglected to include a Rule 7(f) statement" and that she "regrets" the "omission." Doc. [35] at 10.

The Federal Rules of Civil Procedure states that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "permissive standard" of Rule 15 "is consistent with" the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec.*, LLC, — F.3d —, —, No. 13 cv 1476 , 2015 WL 4492258, at *24 (2d Cir. July 24, 2015) (concluding that district court improperly denied leave to amend complaint but "leav[ing] unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility"). While the Court expects counsel to adhere strictly to the Local Rules and will deny motions for noncompliance where appropriate, denying leave to amend the complaint in this instance for failure to include a Local Rule

7(f) statement would be contrary to Rule 15's permissive standard and a clear abuse of the Court's discretion.

**C.**     **Timeliness of Plaintiff's Motion to Amend the Complaint**

There is no merit in Defendant's argument that the motion to amend the complaint should be denied because Plaintiff has not shown "good cause" for why she waited until July 2, 2015 to file it. The argument assumes that the proposed amendments will generate additional discovery and necessitate enlargement of the January 12, 2016 discovery deadline — a modification that is governed by Fed. R. Civ. P. 16(b)'s "good cause" standard.

Rule 16(b) of the Federal Rules of Civil Procedure states that a Scheduling Order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). However, Rule 15(a) states that leave to amend a pleading is granted "freely . . . where justice so requires." Fed. R. Civ. P. 15(a). The Second Circuit has reconciled these rules by holding that once the deadline for amendment set in a scheduling order has expired, a motion to amend is governed by the relatively demanding "good cause" standard of Rule 16(b) rather than the "where justice so requires" standard of Rule 15(a). *Parker v. Columbia Pictures Indus*, 204 F.3d 326, 339-40 (2d Cir. 2000). "[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover . . . a finding of 'good cause' depends on the diligence of the moving party." *Id.* at 340.

The Scheduling Order entered in the case at bar requires all discovery to be completed not later than January 12, 2016. Plaintiff filed her motion to amend on July 2, 2015, over six months before the discovery deadline. In these circumstances, the Second Circuit directs that motions to

8

amend the pleadings are to be governed by the lenient standard of Rule 15(a) — not the "good cause" standard of Rule 16(b) that Defendant advocates. *Id.* at 339-40. It would be contrary to the law to scrutinize instant motion under the more stringent "good cause" standard.

Nor is there reason under the "where justice so requires" standard of Rule 15(a) to conclude that amending the complaint will unduly delay the course of these proceedings. In support of its argument that the instant motion is untimely, Defendant directs the Court to Plaintiff's representation in the Rule 26(f) report that she "did not anticipate moving to join additional parties or to amend the pleadings at this time." Doc. [14] at 5. That statement was made *before* discovery commenced, and *fourteen* months prior to the discovery deadline ultimately imposed by the Court. Discovery practice often gives rise to motions to amend the pleadings. That is what happened here. No unfair prejudice has befallen Defendant, particularly in a case where a motion to amend the complaint was not unlikely.

Defendant professes to wish that Plaintiff's motion to amend the complaint had been filed sooner. Perhaps it could have been; but given the fact that the proposed amended complaint alleges ongoing wrongful acts regarding events that occurred after this action was commenced — some as late as January and April of this year — it does not appear that Plaintiff unduly delayed its filing. Even if she had, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation and internal quotation marks omitted). Undue prejudice arises "where an amendment [comes] on the eve of trial and would result in new problems of proof." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend promptly sought after learning new facts, where "no trial date had been set by the court and

no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery."); *see also Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 424535 at *3 (citing same).  In the relatively early stages of this litigation, where no trial date has been set, and discovery is still in progress, Defendant cannot plausibly maintain that it will be prejudiced by the proposed amendments.

Lastly on this point, I am not persuaded by Defendant's suggestion that the motion to amend the complaint should be denied because it is required under Conn. Gen. Stat. § 7-101a(b) to pay the legal fees of the individual officers named in the proposed causes of action.  The purpose of that statute is to require a municipality to protect and save harmless an employee from financial loss arising out of a claim against an employee alleging malicious, wanton or wilful acts.  It does not function as a municipality's defense against motions to amend pleadings.[2]

---

[2]Conn. Gen. Stat. § 7-101a(b) states in its entirety:

In addition to the protection provided under subsection (a) of this section, each municipality shall protect and save harmless any such municipal officer or municipal employee from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit instituted against such officer or employee by reason of alleged malicious, wanton or wilful act or ultra vires act, on the part of such officer or employee while acting in the discharge of his duties. *In the event such officer or employee has a judgment entered against him for a malicious, wanton or wilful act in a court of law, such municipality shall be reimbursed by such officer or employee for expenses it incurred in providing such defense and shall not be held liable to such officer and employee for any financial loss or expense resulting from such act.*

*Id.* (emphasis added).  I emphasize the last sentence of this statute, omitted by Defendant in its brief, to highlight that Defendant would be entitled to reimbursement *by its officer* for expenses paid defending that officer against whom judgment entered on a claim of intentional infliction of emotional distress.  The Legislature saw fit to limit to that circumstance the Town's obligation to pay these officers' legal fees.  This Court will not impose an additional limitation, in the guise of disallowing a plaintiff's motion to amend a complaint to add officers as defendants on the ground that allowing the amendment might expose the Town to additional legal fees and costs.

**D.**     **Futility of Proposed Amendments**

It is well established that "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Garay v. Novartis Pharmaceuticals Corp.*, 576 F.App'x 24, 25 (2d Cir. 2014) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  *See also Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (finding  leave to replead would be futile where the complaint, even when read liberally, did not "suggest [ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) ("When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.").

The Supreme Court has laid down in two cases guidelines to determine whether the factual allegations of a complaint are sufficient in content and form to survive a motion to dismiss.  Those cases are *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles, " *id*. at 678.

First, although a complaint need not include detailed factual allegations, it must provide

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if

it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550

U.S. at 557.  "Although for the purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched

as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555.  "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556

U.S. at 679.  This 'facial plausibility' prong requires the plaintiff to plead facts "allow[ing] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

Importantly, the complaint must demonstrate "more that a sheer possibility that a defendant has acted

unlawfully." *Id.*  "[W[here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged but it has not 'show[n]' – 'that the pleader  is

entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  "Determining whether a complaint

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id*.[3]

I am required to determine whether under this standard, the proposed amendments — claims

---

[3] The foregoing summary of the *Twombly/Iqbal* pleading standards is adopted from the Second Circuit's opinion in *Pension Benefit Guaranty Corp. ex rel. Saint Vincent Catholic Medical Centers  Retirement Plan v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 717-718 (2d Cir. 2013).

for intentional infliction of emotional distress against Chief James Heavey, Captain Robert Berry, and Captain Mark Kordick — are viable as a matter of law.  In Connecticut, to state a claim of intentional infliction of emotional distress,[4] a plaintiff must allege (1) that defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that defendants' conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Peytan v. Ellis*, 200 Conn. 243, 253 (1986)).

Defendant principally argues that Plaintiff has failed to state a claim for intentional infliction of emotional distress because Plaintiff does not identify conduct by Heavey, Berry, and Kordick that was extreme and outrageous and does not allege that she suffered severe emotional distress.[5]

### 1.     Extreme and Outrageous Conduct

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  *Appleton v. Bd. of Educ.*, 254 Conn. at 210  (citing *Bell v. Board of Education*, 55 Conn. App. 400, 410 (1999)); *see also Cassotto v. Aeschliman*, 130 Conn. App. 230, 235  (2011) (discussing the "gatekeeping function" the "court

---

[4] At points throughout the remainder of this Ruling I refer to a cause of action for intentional infliction of emotional distress by the acronym "IIED."

[5] Plaintiff's argument that leave to amend the complaint should be denied because it does not allege that Plaintiff suffered severe emotional distress is set forth principally in a sur-reply, which Defendant filed without requesting leave of Court.  Motions for leave to file a sur-reply are subject to the sound discretion of the court.  *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013) (internal quotation marks omitted), *reconsideration denied* (July 20, 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015) *cert. denied*, 135 S. Ct. 2896 (2015).  Absent objection, I will excuse this procedural impropriety, and consider Defendant's sur-reply to the extent it assists me in discerning the viability of the proposed amendments under the governing law.

performs" in "assessing a claim for intentional infliction of emotional distress").  "Only where reasonable minds disagree does it become an issue for the jury." *Id.*

"The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998); *see also Carone v. Mascolo,* No. 3:06 cv 01094(DJS), 2007 WL 2318818, at *4 (D. Conn. Aug. 14, 2007) (collecting cases for the proposition that "[c]ourts in Connecticut have been reluctant to allow a claim for intentional infliction of emotional distress"). "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner v. Town of Cheshire*, 126 F. Supp. 2d. 184, 195 (D. Conn. 2000). In *Appleton v. Bd. of Educ.*, 254 Conn. 205 (2000), the Connecticut Supreme Court summarized the applicable standards:

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"   1 Restatement (Second), Torts § 46, comment. (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

254 Conn. at 210 (case citations and internal quotation marks omitted).

"In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous." *Miner v. Town of Cheshire*, 126 F. Supp. 2d. at 195.  "An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious

14

and oppressive manner." *Id.* (allegations that town, *inter alia*, failed to protect female police officer from superior officer's sexual harassment did not state a viable cause of action against the town). *See, e.g.*, *Melendez v. City of New Haven*, No. 3:13 cv 860 (RNC), 2013 WL 6859941, at *1 (D. Conn. Dec. 30, 2013) (complaint did not state IIED claim against supervising officer who allegedly reprimanded and transferred subordinate officer for race-based and retaliatory reasons); *Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09 cv 1596 (CFD), 2010 WL 5174404, at *7 (D. Conn. Dec. 15, 2010) (plaintiff's allegations that manager unfairly harassed and disciplined him, placed tougher demands on him, monitored him closely, and warned him about substandard performance did not state viable IIED claim against manager); *Robinson v. City of New Haven*, 578 F. Supp. 2d 385, 390 (D. Conn. 2008) (allegations that substandard salary and benefits was because of race were insufficient as a matter of law to state IIED claim).

"In addition to routine employment actions, Connecticut courts hold that insults, verbal threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." *Miner v. Town of Cheshire*, 126 F. Supp. 2d.. at 195 (collecting cases). *See, e.g.*, *Molina v. Eagle Leasing Co.*, No. 3:13 cv 00413 (WWE), 2014 WL 3864879, at *1 (D. Conn. Aug. 6, 2014) (plaintiff did not state a cognizable IIED claim against employer where plaintiff alleged, *inter alia*, that he was "harassed, threatened and belittled" by supervisors, "routinely reprimanded for failing to speak English," "threatened" with termination and undesirable job assignments, and witnessed supervisors throw "objects, such as bottles" when they "became angry"); *Adams v. The Hartford Courant & Tribune Co.*, No. 03 cv 0477(JCH), 2004 WL 1091728, at *5 (D. Conn. May 14, 2004) (plaintiff did not state an IIED claim against supervisors where she alleged, *inter alia*, that she was not provided

with desk or pager; was denied training tools; was required to attend meetings where her work was discussed; was given delayed recognition for achievements; was not offered a stock option cash-out; was not advanced and was eventually terminated; and was the subject of insults).

I turn to the three individual officers whose conduct is placed at issue by Plaintiff Gustovich's proposed amended complaint.

### i.   Chief Heavey

Plaintiff's theory of liability against Chief Heavey is that he knowingly tolerated the unlawful conduct of Greenwich police offers and refused to discipline recalcitrant officers; demoted Plaintiff from Patrol Captain to Operations Captain while reducing the purview of the latter; and has marginalized and ignored Plaintiff.  Doc. [35] at 2-3; *see also* Doc. [25-1] (proposed amended complaint) at ¶¶ 15-16, 23, 25, 29, 30, 32-37, 39, 41, 44, 46-47, 53-54, 59.

Given the cases cited and quoted *supra*, it is apparent that Plaintiff's allegations are insufficient as a matter of law to sustain a claim of intentional infliction of emotional distress against Chief Heavey.  Plaintiff's transfer to a position of less importance and responsibility, even if done for a discriminatory reason, is the sort of "routine employment action" that "does not constitute extreme and outrageous behavior." *Miner v. Town of Cheshire*, 126 F. Supp. 2d. at 195.  Allegations that she was marginalized and ignored by Chief Heavey are at most suggestive of the "indignities, annoyances," and "petty oppressions" that are not actionable as a matter of law. *Id.*  The same is true for his tolerance of unlawful conduct and refusal to discipline officers acting against Plaintiff with discriminatory and retaliatory animus. *Sangan v. Yale Univ.*, No. 3:06 cv 587 (PCD), 2006 WL 2682240, at *8 (D. Conn. Sept. 15, 2006)  ("One of Plaintiff's principal claims against Yale is its failure to assist her or deter [its employee] Rajendran after Plaintiff's numerous complaints

16

describing harassing and discriminatory conduct by Rajendran. This Court has held that a failure "to respond" or "to prevent," or "choos[ing] to ignore," such conduct does not rise to the level of extreme or outrageous behavior, nor does it constitute a basis for vicarious liability for the acts of another."); *Ravenscroft v. Williams Scotsman*, Inc., No. 3:14 CV 870 (MPS), 2015 WL 1311332, at *6 (D. Conn. Mar. 23, 2015) (citing same); *see also Presley v. Pepperidge Farm, Inc*., 356 F. Supp. 2d 109, 140 (D. Conn. 2005) (stating that "an employer's inadequate response to an employee's allegations of sexual harassment" does not rise to the level of "extreme and outrageous").

Plaintiff's motion to amend the complaint to assert a claim for intentional infliction of emotional distress against Chief Heavey will be denied.

### ii.   <u>Captain Berry</u>

Plaintiff's proposed claim against Captain Berry for intentional infliction of emotional distress is predicated on the following additional factual allegations.  At a meeting held on November 25, 2014, which was attended by Plaintiff, Berry, and Deputy Chief Marino, Plaintiff asked Berry why he had written "an operational order that contravened an operation order that plaintiff . . . had written the previous year."  Doc. [25-1] at ¶ 56.  According to the proposed amended complaint, this is what happened next:

> Captain Berry became angrily defensive, stood up, and, towering over plaintiff and jabbing his finger at her, demanded, 'Are you attacking me in front of the Deputy Chief?  What is this, an ambush?' Plaintiff responded, 'Bob, I asked a simple question.'  Captain Berry replied, 'If you were doing your job, I wouldn't have to do it for you.'  At that moment, the Assistant Human Resources Director, Erica Mahonney, walked in, and Captain Berry shouted 'Get out, we're having a meeting,' and slammed the door.

*Id*.  The meeting concluded when "Captain Berry stormed out" after "Plaintiff expressed her

frustration at not being recognized or treated as a member of the Command Staff." *Id.*

Captain Berry was later put in charge of investigating Plaintiff's complaint of an instance of sexual harassment, which occurred at an  "After Action Response Meeting" on December 3, 2014. *Id.* at ¶15.1.  The proposed amended complaint alleges that during that meeting, a traffic officer named Daniel Hendrie "made an obscene gesture with his hand, mouth and tough, implying that plaintiff was performing fellatio" on a fellow officer.  *Id.*  The investigation into the official complaint made by Plaintiff, which was led by Captain Berry, found that Hendrie's gesture, while "'shocking and prejudicial to good order an discipline,'" was "mere insubordination," not "'Illegal or Forbidden Harassment.'" *Id.* at ¶ 15.m(v).  Hendrie "was given only a three-day suspension without pay and ordered to undergo training on 'Supervisor and Subordinate Relationships' and on 'Sexual Harassment.'" *Id.*  Three other officers who witnessed Hendrie's obscene gesture and who had an obligation "to intervene or report the incident in accordance with Greenwich Police Department Manual 1007 or 1004e and the Town of Greenwich Sexual Harassment Policy," *id.* at ¶ 15.1, "were all exonerated of failing to take any action" based on the dubious proposition "that they did not have a clear line of sight" to Hendrie.  The proposed pleading criticizes Berry, specifically, for not allowing Plaintiff "to present her account of the incident or address any questions the investigators may have had."  *Id.* at ¶ 15.m(i).

The proposed amendments also allege instances in which Berry has "marginalized," *id.* at ¶ 60, or has "refused to acknowledge or respond," *id.* at ¶ 59, to Plaintiff.  At a meeting attended by Plaintiff, Berry, and Marino, Plaintiff was struggling to make out something on her telephone screen.  Berry "pushed plaintiff's phone away" when Plaintiff "handed the telephone to Captain Berry so that he could read it."  *Id.* at ¶ 59.a.  At a dispatch meeting, when Plaintiff "asked Captain Berry

18

a question about a Mobile Communication Vehicle," "Berry looked down, and refused to acknowledge or answer plaintiff's question." *Id.* at ¶ 59.b.  During a "severe blizzard" in January 2015, "Berry assigned himself and Deputy Chief Marino to work double shifts," but "marginalized" Plaintiff by not "utiliz[ing] her during the storm."  At the Silver Shield Association Awards ceremony held on April 26, 2015, Berry "refused" to sit next to Plaintiff, thereby "making clear his public disdain of and hostility to plaintiff."  *Id.* at ¶ 61.  Berry also "repeatedly goes directly to plaintiff's subordinate officers, bypassing her, even though plaintiff has asked him on numerous occasions not to do so." *Id.* at ¶ 59.c.

There is nothing in these allegations that suggests the extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress.  Viewed in the light most favorable to Plaintiff, the facts suggest that Berry ignored Plaintiff, undermined her authority, conducted a less than adequate investigation into her complaint of sexual harassment, and on one occasion, yelled at Plaintiff in a very aggressive manner.  I do not question the sincerity with which Plaintiff perceives herself to have been be wronged by Captain Berry.  If Plaintiff's accounts of Berry's conduct are accurate, her resentment is entirely understandable.  However, a plaintiff "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  *Davis v. Davis*, 112 Conn. App. 56, 67 (2009) (internal quotation marks and citation omitted).  The allegations against Captain Berry, though suggestive of conduct that is inconsiderate and unkind, are insufficient as a matter of law to sustain a claim for intentional infliction of emotional distress.  The motion to amend the complaint to assert that claim against Captain Berry will be denied.

### iii.   <u>Captain Kordick</u>

Plaintiff alleges that she has endured the "outrageous physically threatening conduct" of

Captain Kordick.  Doc. [25-1] at ¶ 47.  This is what she alleges occurred at a January 8, 2014 staff meeting:

> Captain Kordick became enraged at plaintiff.  He kept banging his hands and cell phone on the table, and he grabbed the bottom of his chair and began to jump up and down while grunting like an animal through gritted teeth and leaning towards plaintiff.  At no point did anyone in the room attempt to stop him or his behavior.  Plaintiff tried to remain calm and professional.  At one point, Captain Kordick jumped out of his chair, pushing his chair so hard it hit the wall and began to directly yell at plaintiff.  Although the Chief finally said "Enough," Captain Kordick continued his abusive behavior.

*Id.*  Following the meeting, Plaintiff told Marino that she felt "threatened" by Kordick's behavior.  *Id.*  Plaintiff learned later that when Marino spoke to Kordick about his conduct, Kordick "overturned a table." *Id.*  Plaintiff was also told by fellow offers "to 'watch her back' because Captain Kordick was out of control and extremely angry at her." *Id.*

In July 2012, about a year a half before the January 8, 2014 staff meeting, Greenwich police officer Albert Moavero posted a message on a social networking website stating words to the effect, "the dyke should be hanging from the rafters.'" *Id.* at ¶ 15.d. When Kordick learned of this comment he stated, in Plaintiff's presence, "'it's not slander if it's true.'" *Id.*

Roughly "one month" after the January 8, 2014 staff meeting, Kordick "was observed wearing plainclothes and walking about the third floor of the Greenwich Police station, where plaintiff's office is located, carrying a patrol rifle." *Id.* at ¶ 49.  After Plaintiff was made aware of this incident, she again told Marino that "she felt threatened by Captain Kordick." *Id.*

In a separate incident that occurred a "few weeks" after the January 8 meeting, Plaintiff "passed Captain Kordick in the hallway, and he made a full body gesture by putting his arms up and out to the side while lunging towards plaintiff." *Id.* at ¶ 52.

Not all of these allegations can be dismissed as the sort of offensive language, minimally oppressive conduct, and routine employment action that does not give rise to a claim for intentional infliction of emotional distress as a matter of law. Construing the allegations in the light most favorable to Plaintiff, as I am required to do at this juncture, the proposed pleading states something more: that Kordick intentionally made Plaintiff fear for her physical safety.

In arriving at that conclusion, I am aware of the fact that some of the more alarming conduct alleged — Kordick overturning a table, for instance, or carrying a patrol rifle near Plaintiff's office — did not occur in Plaintiff's presence, and as such, are allegations that do not independently establish a claim for intentional infliction of emotional distress. However, such incidents, whose occurrences I accept on this motion were recounted to Plaintiff by others, are probative of whether Plaintiff had reason to fear that Kordick's overall conduct constituted a threat to her physical safety. In addition, Plaintiff alleges instances of personal and direct physical intimidation. The proposed amended pleading alleges that Kordick, at the January 8 meeting, banged his hands and cell phone on the table, aggressively manipulated his chair and leaned toward Plaintiff, and, on a subsequent occasion, *lunged* at Plaintiff in the hallway.

Courts recognize that "[t]here is no bright light rule to determine what constitutes extreme and outrageous conduct sufficient to maintain" an actionable claim for intentional infliction of emotional distress, *Menon v. Frinton*, 170 F. Supp. 2d 190, 198 (D. Conn. 2001), but courts have held that such claims are cognizable where supported by allegations of physical assault or threatening physical conduct. *See, e.g., Miller v. Ethan Allen Global, Inc.*, No. 3:10 cv 1701 (JCH), 2011 WL 3704806, at *13 (D. Conn. Aug. 23, 2011) (IIED claim survived where plaintiff alleged that "she was physically assaulted by Legendre who 'grabbed the plaintiff's neck with great force, and held on' and

also 'slammed papers on the plaintiff's desk'"); *Javier v. Deringer-Hey, Inc.*, 578 F. Supp.2d 368, 374 (D. Conn. 2009) (Bryant, *J.*) (IIED claim was stated where plaintiff alleged "that he was verbally and possibly physically assaulted by an aggressive coworker while he handled laboratory chemicals"); *Benton v. Simpson*, 78 Conn. App. 746, 749 (2003) (plaintiffs established probable cause for purposes of prejudgment remedy to support IIED claim where supervisor *inter alia* would "bang his fist to make a point," "bang[] on a filing cabinet" and "get 'in your face' or 'in your space'").

Based on this authority, and accepting, as I must on this motion, Plaintiff's allegations as true, I conclude that the proposed pleading alleges conduct of Captain Kordick that was designed to, and did, cause Plaintiff to fear for her physical safety. I further conclude without difficulty that such conduct, if proved, directed by a member of the Greenwich Police Department's command structure toward a colleague and sister officer, was extreme and outrageous, as those terms are defined by the cases.

### 2.   Severe Emotional Distress

I am not persuaded by Defendant's secondary argument that the proposed amended complaint should be denied because it does not plausibly allege that Plaintiff suffered severe emotional distress. A claim for intentional infliction of emotional distress must allege suffering "so severe that no reasonable person could be expected to endure it." *Buster v. City of Wallingford*, 557 F. Supp.2d 294, 301 (D. Conn. 2008) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). Plaintiff claims Defendant's unlawful conduct caused her "anxiety,""embarrassment," "degradation," "humiliation," "fear for her safety," and that the conduct of Kordick, specifically, "caused [her] to suffer severe emotional distress and related physical illness and bodily harm." Doc. [25-1] at ¶¶ 64, 71 (count I), and 71 (count VI).

Defendant cites authority from this District in which claims for intentional infliction of emotional distress survived where the plaintiff pleaded the nature of suffering with greater particularity.  Doc. [37] at 8 (citing *Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 12 (D. Conn. 2011); *Vorvis v. Southern New England Tel. Co.*, 821 F. Supp. 851, 855 (D. Conn. 1993)). I do not quarrel with Defendant's view that the plaintiff in those cases alleged specific facts showing the severity of their emotional distress.  But the Court's task at this juncture is not to discern whether the allegations at bar rise to the level of the facts alleged in the cited cases, but to determine whether under the *Twombly/Iqbal* pleading standard Plaintiff plausibly alleges that she suffered severe emotional distress.  Drawing all reasonable inferences her favor, I conclude that she has.  *Cf. Benton v. Simpson*, 78 Conn. App. at 753-54 (evidence of severe emotional distress where plaintiffs testified to "depression, anxiety and other serious physical conditions associated with stress").  Whether Plaintiff's suffering was so severe that it no reasonable person could be expected to endure it will be a subject of inquiry in this case's ongoing discovery.

### III

In addition to asserting claims for intentional infliction of emotional distress against officers Heavy, Berry, and Kordick, the proposed amended complaint contains additional factual allegations regarding Defendant's conduct that are relevant to Plaintiff's discrimination claims.  I will permit those amendments because I am unable to conclude that they are futile or prejudicial to Defendant.

### IV

To revert to Plaintiff's proposed new claims for the intentional infliction of emotional distress upon her: This Ruling allows Plaintiff to amend her complaint to assert that claim against Greenwich Police Captain Mark Kordick, but denies leave to allege such a claim against Chief James Heavey

23

and Captain Robert Berry.

The distinction between these prospective defendants results from the cases cited and discussed *supra*.  Kordick's conduct differs from that of Heavey and Berry because Kordick's conduct alone was accompanied and complicated by acts and declarations sufficient to create in Plaintiff's mind a reasonable concern that Kordick posed a threat to her physical safety.  That cannot be said of the conduct of Heavey and Berry, however deplorable Gustovich alleges it to have been.

Under the cases, the element of physical safety is determinative of the viability of a claim for the intentional infliction of emotional distress.  Connecticut law stringently limits the recognition of such a claim: a limitation rooted in discernible public policy.  It is inherent in human nature that anyone injured or damaged by another's acts (sounding in tort or contract) feels some degree of "emotional distress" aimed at the wrongdoer.  If the courts allowed a separate IIED claim in every case of wrongful conduct, that theory of recovery would be ubiquitous and meaningless.  The rule of law avoids that consequence by requiring that to sustain a claim for the intentional infliction of emotional distress, a defendant's conduct must be so extreme, so intolerable, so beyond the bounds of decency, so conscious-shocking, that an uninvolved member of the community, aware of imperfect and sinful mankind's propensity to err, would upon learning of the offending conduct recoil and exclaim: "But that is OUTRAGEOUS!"  Which is to say: Worse than *discriminatory*, or *mean-spirited*, or *unprofessional*, or *deplorable*: adjectives defining conduct which merits condemnation by right-thinking persons but falls short of causing outrage.  Plaintiff's allegations against Kordick are sufficient to satisfy this demanding standard.  Her allegations against Heavey and Berry are not.[6]

_____

[6]  As noted in text, the effect of Part II.D. of this Ruling is to deny Plaintiff Gustovich leave to plead a claim for intentional infliction of emotional distress against Chief Heavey and Captain

## V

For the reasons stated above, Plaintiff's Motion to Amend Her Complaint (Doc. #25) is GRANTED IN PART AND DENIED IN PART.

Specifically, the motion is GRANTED to the extent that Plaintiff may amend her complaint to allege a claim for the intentional infliction of emotional distress against Mark Kordick. Kordick should accordingly be added as a party Defendant to the action.

The motion is DENIED to the extent that Plaintiff sought leave to amend her complaint to assert claims for intentional infliction of emotional distress against James Heavey and Robert Berry. Those individuals will not be added as parties Defendant to this action.

Plaintiff is directed to file and serve an Amended Complaint consistent with this Ruling on or before September 21, 2015.

Defendants are required to file a responsive pleading within the time provided by the Federal Rules of Civil Procedure.

It is SO ORDERED.

Dated:   New Haven, Connecticut
             September 8, 2015


_____/s/ Charles S. Haight, Jr._____
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

Berry, and grant her leave to plead that claim against Captain Kordick. It should be emphasized that the Court's reasoning does not condone the conduct of Heavey or Berry, as Plaintiff describes it in the proposed amended complaint. If Plaintiff's accounts of the behavior of these two supervisory officers are true and proven at trial, Heavey and Berry would stand revealed as having engaged in discriminatory, mean-spirited, unprofessional and deplorable conduct. Such conduct would furnish potential predicates for the Town of Greenwich's liability on the first four claims for relief Plaintiff asserts in her proposed amended complaint, which allege violations of federal and state civil rights and anti-discrimination statutes. Those claims are not implicated in the present motion.